IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MADISON UNIVERSITY MALL LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-169 |
| | ) | |
| CHAPEL HILL TIRE CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on the defendant's amended motion to dismiss. (Doc. 13.) The case arises out of a dispute over liability for costs associated with cleaning up contaminated fill material in the ground at a shopping center owned by the plaintiff, Madison University Mall. Madison contends that the defendant, Chapel Hill Tire Company, is responsible for these clean-up costs pursuant to the Comprehensive Environmental Response Compensation and Liability Act, pursuant to a lease agreement between Madison's predecessor and CHT, and pursuant to the common law of North Carolina.

**FACTS**

According to the complaint, in 1972 CHT entered into a written lease of certain real property at the University Mall in Chapel Hill, agreeing to rent the property from the then-owner for a term of years with an option to extend. (Doc. 1 at ¶¶ 7-8; *see generally* Doc. 1-1.) CHT operated an automotive service center on the premises. (Doc. 1 at ¶ 16.) On January 3, 1992, CHT assigned the lease to Larry Braxton, Inc. ("LBI"), as tenant; the assignment was approved by the then-owner of the property. (*Id.* at ¶ 10.) Madison bought the property in 2007 and is successor-in-interest to any rights of the previous owners in the lease and in the assignment. (*Id.*

at ¶¶ 13-14.) LBI and Madison entered into a new lease for the property on September 21, 2012. (*Id.* at ¶ 15.)

A month later, during the course of some expansion work at the shopping center, what appeared to be used oil was discovered near a storm-water pipe. (*Id.* at ¶ 24.) Upon investigation, used oil was located along the 200-foot length of the storm-water pipe. (*Id.* at ¶ 35.) Madison incurred substantial costs in investigating and cleaning up the site. (*Id.* at ¶ 39.)

According to Madison, CHT and, later, LBI stored used oil in above-ground tanks and kept used oil filters in dumpsters on the property. (*Id.* at ¶¶ 19, 21.) Storm water contaminated with used oil from the tanks and filters drained from the leased property to the nearby area, where it was discovered in 2012. (*Id.* at ¶¶ 19-20.) Madison also alleges that at some point in the mid-1990's approximately 40 gallons of used oil were released to the storm-water pipe. (*Id.* at ¶ 22.) After the clean-up, Madison demanded that LBI indemnify it for the costs associated with the clean-up; when LBI refused, Madison sought indemnification from CHT. (*Id.* at ¶¶ 40-41.) When CHT declined, this lawsuit ensued.

## ANALYSIS

1. **CERCLA Claims**[1]

Madison has asserted two claims under CERCLA: one for recovery of its costs associated with cleaning up the property under 42 U.S.C. § 9607(a) ("Section 107(a)"), and a second for contribution under 42 U.S.C. § 9613(f) ("Section 113(f)"). CHT makes arguments specific to each claim, as well as an argument that both claims should be dismissed for failure to join indispensable parties.

---

[1] These are denominated in the complaint as the Second Claim for Relief, (Doc. 1 at ¶¶ 49-56), and the Third Claim for Relief, (*id.* at ¶¶ 57-58).

### a. Costs

CHT contends that Madison fails to state a CERCLA claim because this is an action for the release of used oil, which is excluded from CERCLA coverage by the "petroleum exception." 42 U.S.C. § 9601(14)(F). Madison contends that used oil is a hazardous substance covered by CERCLA and that, in any event, this argument is inappropriate at the motion to dismiss stage because it is the defendant's burden to prove the petroleum exception. Madison appears to be correct on the first point, and is certainly correct as to the second.

The petroleum exception only applies to unadulterated petroleum products. *Dartron Corp. v. Uniroyal Chem. Co.*, 917 F. Supp. 1173, 1183 (N.D. Ohio 1996) (collecting cases). Used motor oil "almost certainly" is hazardous waste under CERCLA. *Id.* at 1183. CHT has cited no case to the contrary. Madison's allegations are sufficient at this stage to invoke CERCLA's definition of hazardous waste.

Moreover, the defendant has the burden to prove the petroleum exception. *Ekotek Site PRP Comm. v. Self*, 932 F. Supp. 1319, 1323 (D. Utah 1996); *see also Members of Beede Site Grp. v. Fed. Home Loan, Mortg. Corp.*, 968 F. Supp. 2d 455, 460-61 (D.N.H. 2013); *Dartron*, 917 F. Supp. at 1184; *accord United States v. Duke Energy Corp.*, No. 1:00CV1262, 2010 WL 3023517, at *7 (M.D.N.C. July 28, 2010) ("Generally, the party seeking to benefit from an exception to a statutory requirement carries the burden of proving that the exception applies."). This is not appropriate to resolve at the 12(b)(6) stage.[2]

---

[2] CHT initially contended that Madison's allegations are insufficient because they do not identify the alleged hazardous substances, but it withdrew this contention at oral argument. CHT does contend that the damages allegations are too speculative, but this argument ignores detailed allegations and provides no citations to any cases that support its position. These arguments are without merit. CHT also contends that Madison does not adequately allege that its costs were necessary and consistent with the national contingency plan, as required by § 9607(a). This is

### b. Contribution

Madison's second CERCLA claim is for contribution. CHT contends, persuasively, that the contribution claim should be dismissed because such claims are only appropriate after the party seeking contribution has been sued for cost recovery under § 9606 or § 9607 of CERCLA. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 160-61, 168 (2004) ("Section 113(f)(1) . . . authorizes contribution claims only 'during or following' a civil action under § 106 or § 107(a), and it is undisputed that Aviall has never been subject to such an action.[] Aviall therefore has no § 113(f)(1) claim."). Madison has not alleged and does not contend that it has been sued under § 9606 or § 9607; indeed, it contends that it voluntarily cleaned up the contamination. And Madison has not offered any explanation of how its claim is consistent with *Cooper*. Madison's reliance on *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007), is not persuasive because that case reaffirms *Cooper*'s holding that "a private party could seek contribution from other liable parties only after having been sued under § 106 or § 107(a)." 551 U.S. at 133. *Cooper* forecloses Madison's contribution claim unless and until Madison is sued for cost recovery or otherwise incurs involuntary costs. *See id.* at 139 n.6 (noting gap between holdings in *Cooper* and *Atlantic Research* because certain costs, such as those pursuant to consent decrees, are not voluntary but are also not reimbursing the costs of another party); *see also Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 124-28 (2d Cir. 2010) (holding that Section 113(f), not Section 107(a), was the correct avenue for costs incurred pursuant to consent decree); *Carolina Power & Light Co. v. Alcan Aluminum Corp.*, 921 F.

---

another fact intensive inquiry inappropriate for resolution at the Rule 12(b)(6) stage. *Cf. Cadillac Fairview/Cal., Inc. v. Dow Chem. Co.*, 840 F.2d 691, 695 (9th Cir. 1988); *Murray v. Bath Iron Works Corp.*, 867 F. Supp. 33, 47 (D. Me. 1994).

Supp. 2d 488, 491 (E.D.N.C. 2013) (noting that "response costs incurred pursuant to an administrative settlement . . . are recoverable only under § 113(f)," not § 107(a)).

Madison also cites 42 U.S.C. § 9613(g)(2) for its contention that its contribution claim is appropriate because of the possibility of future claims from third-parties seeking reimbursement from Madison. First, Madison's argument directed to future costs is inconsistent with the relevant allegations of the complaint, which specifically seek contribution for "costs that Plaintiff has incurred," i.e., past, not future, costs. (Doc. 1 at ¶ 58.) Madison cannot amend the complaint to add a claim for contribution for potential future damages merely by making an argument in a brief. *See Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 542-43 (E.D.N.C. 2008) (collecting cases).

In any event, § 9613(g)(2) concerns declaratory relief for future costs and is not relevant to a contribution claim under § 9613(f). *See generally Dent v. Beazer Materials & Servs., Inc.*, 156 F.3d 523, 531-32 (4th Cir. 1998) (discussing the declaratory judgment provision in § 9613(g)(2) extensively). While Madison has not explicitly sought such declaratory relief, it appears to be a necessary and mandatory part of an action for recovery of costs, *id.* at 531, which Madison has set forth in its § 107(a) claim. *See* discussion *supra* Part 1.a. While the Court will dismiss the claim for contribution as to past expenditures, the question of liability for any future costs remains part of the case in connection with the § 107(a) claim for costs.[3]

### c. Indispensable Parties Under Federal Rule of Civil Procedure 19

CHT contends that other potentially responsible parties under CERCLA must be joined as indispensable parties. This argument has been roundly rejected and CHT cites no cases to the

---

[3] At oral argument, Madison indicated that it primarily made the § 113(f) claim in case it is sued for recovery of costs later in the litigation. As such, the Court will dismiss this claim without prejudice and grant leave to amend its complaint should this contingency arise.

contrary. *See* 2 James T. O'Reilly, Superfund & Brownfields Cleanup § 19:14. This argument is without merit.

   2. **Common Law Tort Claims**[4]

In a case involving state law nuisance claims arising out of alleged contamination of land and water, the Supreme Court recently held that CERCLA does not preempt North Carolina's ten-year statute of repose. *CTS Corp. v. Waldburger*, ___ U.S. ___, ___, 134 S. Ct. 2175, 2187-88 (2014). As a result, the plaintiff agrees that its negligence and trespass claims are barred. (Doc. 21 at 1-2.)

   3. **Breach of the Lease Agreement**[5]

The 1972 lease contains a provision requiring CHT to bear the costs for any damage resulting should it cause foreign substances to enter the plumbing system at the premises. (Doc. 1 at ¶ 43; Doc. 1-1 at p. 24 ¶ 7.) The lease also states that CHT "shall indemnify and hold [Madison] harmless against any and all claims for damages . . . to . . . property . . . as a result of any willful, intentional or negligent acts or conduct of [CHT], its agents and employees." (Doc. 1-1 at p. 18 ¶ 33.) The 1992 assignment states that CHT is secondarily liable for all agreements under the lease and that the assignment does not "relieve [CHT] of any responsibilities which it may have now or in the future under the provisions of any applicable local, state or federal rules, regulations or laws dealing with hazardous substances." (Doc. 1-2 at ¶ 2.) Madison asserts that CHT has breached these provisions by refusing to indemnify Madison for the costs of cleaning up the contamination caused by putting used oil in the plumbing.

---

   [4] These are denominated as the Fourth (negligence) and Fifth (trespass) Claims for Relief. (Doc. 1 at ¶¶ 59-68.)

   [5] This is denominated as the First Claim for Relief in the Complaint. (Doc. 1 at ¶¶ 42-48.)

CHT contends that this claim is barred for two reasons: first, because Madison has not attempted to recover from CHT's assignee, who is primarily liable, and second, because it is barred by the statute of repose. CHT attached the lease and the lease assignment to the complaint, and thus it is appropriate to consider them on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 10(c); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### a. Failure to Sue Assignee

The rule that "[t]he lessor may sue either the lessee or the assignee, or both" for breaches of the lease agreement is well established in North Carolina. *Coulter v. Capitol Fin. Co.*, 266 N.C. 214, 220, 146 S.E.2d 97, 102 (1966).

> [T]he mere assignment of a lease, even with the consent of the lessor, does not relieve the original lessee from liability under his express covenants. To absolve the original lessee from liability in case of an assignment, it must appear in fact that the lessor has contracted that the lessee shall not be further liable.
>
> The fact that the assignee is also liable for rent . . . will not discharge the lessee. Unless the lessor has accepted the assignee as a substitute in place of the original lessee, the lessor may, at his election, pursue either or both for payment, although he may have but one satisfaction.

*Fidelity Bank of Durham v. Bloomfield*, 246 N.C. 492, 499, 98 S.E.2d 865, 869-70 (1957) (internal quotation marks omitted); *accord* 49 Am. Jur. 2d *Landlord & Tenant* § 952 (2014) ("The lessor, notwithstanding an assignment of the lease, . . . retains the right to enforce against the lessee all the personal covenants contained in the lease, unaffected by the fact of the assignment."). CHT cites no authority for its argument that Madison must sue CHT's assignee to judgment before it can sue CHT. This argument is without merit.

### b. Statute of Repose

As noted *supra*, the Supreme Court recently held that CERCLA does not preempt North Carolina's ten-year statute of repose. *CTS Corp.*, 134 S. Ct. at 2187-88. CHT contends that *CTS*

7

*Corp.* also bars Madison's state law breach of contract claim. Madison contends that the statute of repose does not apply to breach of contractual indemnification claims.

North Carolina's statute of repose provides that in actions for "physical damage to claimant's property . . . . no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-52(16). From this, the defendant contends that its last act or omission was in 1992 when it assigned the lease or, at the latest, 1997 when the final lease extension ended, and therefore the plaintiff needed to bring the action before 2002 or, at the latest, 2007.

Madison contends that the statute of repose does not bar this action because it is an indemnity suit, not a direct breach of contract action, and that this cause of action did not arise until CHT refused to indemnify it for the clean-up costs. The complaint suggests this refusal occurred in 2013. (Doc. 1 at ¶ 41.) Neither the parties nor the Court have identified a case discussing whether the statute of repose in N.C. Gen. Stat. § 1-52(16) would apply to a breach of contractual indemnification claim. However, the text of the statute and case law interpreting analogous provisions indicate that the statute of repose does not bar Madison's breach of contractual indemnification claim.

The statute of repose bars claims "more than 10 years from the last act or omission of the defendant *giving rise to the cause of action*." N.C. Gen. Stat. § 1-52(16) (emphasis added). The North Carolina Court of Appeals has interpreted a similarly worded statute of repose to mean that "in order to constitute a last act or omission, that act or omission must give rise to the cause of action." *Bryant v. Don Galloway Homes, Inc.*, 147 N.C. App. 655, 658, 556 S.E.2d 597, 600 (2001) (quotation marks and internal alterations omitted) (interpreting N.C. Gen. Stat. §1-50(a)(5)(a)). Because this is an indemnity claim, CHT's last act giving rise to Madison's cause

of action was CHT's refusal to indemnify Madison, not the last date CHT was on or responsible for the property. Madison is not suing CHT for breaching the lease by improperly disposing of used oil; rather, Madison is suing CHT for breaking the promise to pay in the future for any such damage, a promise CHT allegedly broke in 2013.

In *Monson v. Paramount Homes, Inc.*, 133 N.C. App. 235, 242, 515 S.E.2d 445, 450 (1999), the North Carolina Court of Appeals held that the statute of repose in N.C. Gen. Stat. § 1-50(a)(5) barred a general contractor's claim against a sub-contractor. The sub-contractor completed its work in 1990, but returned to complete a repair in 1994. 133 N.C. App. at 238, 515 S.E.2d at 448. The court rejected the contractor's argument that the repair was the defendant's last act or omission because there was no evidence that the subcontractor "had a continuing duty to complete any repairs under the . . . contract" with the contractor. *Id.* at 239, 515 S.E.2d at 448. "A duty to complete performance may occur after the date of substantial completion, however, a 'repair' does not qualify as a 'last act' . . . *unless it is required under the improvement contract* by agreement of the parties." *Id.* at 241, 515 S.E.2d at 450 (emphasis added). From this, Madison persuasively contends that because future indemnification was clearly required under the lease, the statute of repose should run from the date CHT refused to indemnify.

North Carolina courts have also recognized the possible effect of continuing duties under contracts in cases involving the statute of repose for legal malpractice claims. In *Hargett v. Holland*, 337 N.C. 651, 653, 447 S.E.2d 784, 786 (1994), the North Carolina Supreme Court held that the malpractice statute of repose barred the plaintiff's action against an attorney for negligence in drafting a will. The Court of Appeals held that the action was not barred because

9

the attorney had a continuing duty to correct the will until the testator died. *Id.* at 652, 447 S.E.2d at 786. Reversing, the Supreme Court found no allegations of such a continuing duty:

> Absent allegations of an ongoing attorney-client relationship between testator and defendant with regard to the will from which such a continuing duty might arise, or allegations of facts from which such a relationship may be inferred, the allegations which are contained in the complaint are insufficient to place any continuing duty on defendant to review or correct the prepared will, or to draft another will.

*Id.* at 655-56, 447 S.E.2d at 788. Because there was no continuing duty, the defendant's last act under the contract occurred when he supervised the execution of the will, and thus the statute of repose barred the plaintiff's action. *Id.* at 654, 447 S.E.2d at 787. Had there been a continuing duty, then presumably the result would have been otherwise. *See Garrett v. Winfree*, 120 N.C. App. 689, 694-95, 463 S.E.2d 411, 415 (1995) (court assumed, *arguendo*, that attorney had a continuing duty to submit a change of condition request for worker's compensation client for two years as allowed by statute; therefore, legal malpractice statute of repose ran from the end of the two year period when continuing duty expired); *cf. Premier Corp. v. Econ. Research Analysts, Inc.*, 578 F.2d 551, 553–54 (4th Cir. 1978) (holding that "a cause of action on an obligation to indemnify normally accrues when the indemnitee suffers actual loss" so that plaintiff's claim for indemnity under the contract was not barred by North Carolina's statute of limitations.)[6]

From these cases, the Court concludes that the statute of repose in N.C. Gen. Stat. § 1-52(16) does not bar Madison's breach of contractual indemnification claim. In the lease, CHT

---

[6] The North Carolina legislature explicitly imposed a statute of repose on actions based upon or arising out of the defective or unsafe condition of an improvement to real property, even if an indemnification agreement is involved. N.C. Gen. Stat. § 1-50(a)(5)(b)(6). The legislature did the same for actions against a surety for such losses. *Id.* § 1-50(a)(5)(b)(7). Thus, it is clear that the legislature knows how to impose a statute of repose on indemnification claims if that is what it intends.

agreed to a continuing duty to indemnify Madison for the kinds of damages alleged here.[7] CHT allegedly refused to indemnify Madison for such damages in 2013. Therefore, CHT's last act or omission giving rise to Madison's breach of contract cause of action was the failure to indemnify in 2013. CHT's motion to dismiss this claim will be denied.

## CONCLUSION

Madison's claims under § 107 of CERCLA and for breach of the indemnification contract may proceed. All other claims will be dismissed.

For the reasons stated herein, it is **ORDERED** that the defendant's amended motion to dismiss, (Doc. 13), is **GRANTED in part** and **DENIED in part**. Specifically:

1. The motion is **GRANTED** as to the plaintiff's negligence and trespass claims, and those claims are dismissed with prejudice.
2. The motion is **GRANTED** as to the plaintiff's CERCLA claim for contribution under Section 113(f), 42 U.S.C. § 9613(f), and that claim is dismissed without prejudice.
3. The motion is **DENIED** as to the plaintiff's CERCLA claim for recovery of costs under Section 107(a), 42 U.S.C. § 9607(a).
4. The motion is **DENIED** as to the plaintiff's breach of contract claim.

This the 23rd day of July, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[7] The Court expresses no view as to what damages CHT is or might be responsible for, because there appear to be a number of factual issues about when and how this oil came to be in the ground, among other things. Nor does the Court express any views about the point at which that responsibility ended or what liabilities CHT may have agreed to accept in the assignment.